UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>TIANA ROUNTREE,<br><br>Defendant. | 5:20-CR-50051-10-KES<br><br>ORDER DENYING MOTION FOR RELIEF UNDER THE FIRST STEP ACT |

Defendant, Tiana Rountree, filed a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). Docket 537. Plaintiff, the United States of America, opposes the motion. Docket 545. For the following reasons, Rountree's motion for compassionate release is denied.

**BACKGROUND**

On June 16, 2021, Rountree pleaded guilty to conspiracy to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and 846. Docket 338; Docket 320. On September 8, 2021, the court sentenced Rountree to 118 months in custody followed by 5 years of supervised release. Docket 485 at 2-3. Her anticipated release date is February 18, 2029. *See Find an Inmate.*, Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Jan. 30, 2023).

Rountree is incarcerated at SeaTac FDC, an administrative security federal detention center. *See id.; FDC SeaTac*, Fed. Bureau of Prisons, https://www.bop.gov/locations/institutions/set/ (last visited Jan. 24, 2023). The total population at SeaTac FDC is 928 persons. *See FDC SeaTac.*

Rountree is 26 years old. *See Find an Inmate.* In support of her motion, Rountree cites her medical conditions, the current conditions in SeaTac FDC, and the COVID-19 pandemic as circumstances that warrant release from custody under the First Step Act. Docket 537 at 2-11. On May 6, 2022, Rountree submitted an inmate request to the warden of FDC SeaTac requesting compassionate release. Docket 537-1 at 1. The warden denied Rountree's request on May 25, 2022. *Id.* at 2-3. Rountree filed a pro se motion seeking compassionate release under the First Step Act on July 11, 2022. Docket 537.

## DISCUSSION

Because sentences are final judgments, a court ordinarily "may not modify a term of imprisonment once it has been imposed[.]" 18 U.S.C. § 3582(c). In 2018, Congress passed the First Step Act (FSA). Pub. L. No. 115-391, 132 Stat. 5194 (2018). In pertinent part, the FSA amends 18 U.S.C. § 3582(c)(1)(A) to permit incarcerated defendants in certain circumstances to file motions with the court seeking compassionate release. Compassionate release provides a narrow path for defendants with "extraordinary and compelling reasons" to leave prison early. 18 U.S.C. § 3582(c)(1)(A)(i). Such a reduction in sentence must take into consideration the 18 U.S.C. § 3553(a) sentencing factors and be consistent with applicable policy statements issued by the Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A).

The Sentencing Commission's policy statement, which was adopted

before the FSA was passed, requires both "extraordinary and compelling reasons" to warrant a sentence reduction and that the defendant not pose a "danger to the safety of others." USSG § 1B1.13(1)-(2) (Nov. 2021). The burden to establish that a sentence reduction is warranted under 18 U.S.C. § 3582(c) rests with the defendant. *See United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

Rountree argues that the global COVID-19 pandemic, her health conditions, and her current incarceration at SeaTac FDC satisfy the "extraordinary and compelling reasons" standard under 18 U.S.C. § 3582(c)(1)(A)(i). Docket 537 at 2-11. She asks for a sentence of time served and a period of home confinement as a condition of supervised release. *Id.* at 15.

## I. Administrative Exhaustion

Previously, only the BOP Director had the authority to bring a compassionate release motion on a defendant's behalf. Imposition of a sentence of imprisonment, 18 U.S.C.A. § 3582(c)(1)(A) (West, Westlaw through Pub. L. 107-273 (excluding Pub. L. No. 115-391)). With the enactment of the FSA, however, Congress has now permitted courts to grant compassionate release on motions filed by defendants "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C.A. § 3582(c)(1)(A)

On May 6, 2022, Rountree submitted an inmate request to the warden of FDC SeaTac seeking compassionate release. Docket 537-1 at 1. Her request was denied on May 25, 2022. *Id.* at 2-3. Rountree submitted a motion for compassionate release on July 11, 2022. Docket 537. Having presented the denial letter from the warden and hearing no objection from the United States, the court will presume Rountree has satisfied the administrative exhaustion requirement[1] and will review the matter on the merits.

## II.    Extraordinary and Compelling Reasons

The Sentencing Commission was directed by Congress to describe what "should be considered extraordinary and compelling reasons" for compassionate release and fashion "the criteria to be applied and a list of specific examples. " *See* 28 U.S.C. § 994(t). The Sentencing Commission affirms that rehabilitation alone does not constitute an extraordinary and compelling reason. *Id.* To provide some further guidance, the Sentencing Commission limited "extraordinary and compelling reasons" to three categories. USSG § 1B1.13, cmt. n.1(A)-(C). The three categories pertain to a defendant's (1) serious physical medical condition or cognitive impairment, terminal illness, deterioration of one's physical or mental health because of the aging process, (2) advanced age and deteriorating health in combination with the amount of time served, and (3) compelling family circumstances. *Id.* A fourth catch-all category also exists for an "extraordinary and compelling reason other than, or

---

[1] The warden's response states that Rountree has the right to appeal through the administrative remedy process. Docket 537-1 at 3. It is unclear whether Rountree appealed the decision administratively. Docket 541 at 76.

in combination with, the reasons described in subdivisions (A) through (C)" as determined by the BOP. USSG § 1B1.13, cmt. n.1(D). The Sentencing Commission also asserts that the "foreseeability of extraordinary and compelling reasons" does not exclude one from consideration for a reduction in sentence. USSG § 1B1.13, cmt. n.2.

The court has detailed the governing law and the analysis it uses when confronted with a compassionate release motion in many previous orders. *E.g.*, *United States v. Kenefick*, 5:19-CR-50058-01-KES, 2022 WL 1295898, at *2-3 (D.S.D. Apr. 13, 2022); *United States v. Beall*, 4:15-CR-40080-01-KES, 2022 WL 1202602, at *2-3 (D.S.D. Apr. 22, 2022); *United States v. Shields*, 3:07-CR-30106-01-KES, 2021 WL 765001, at *2-3 (D.S.D. Feb. 26, 2021); *United States v. Muhs*, 4:19-CR-40023-02-KES, 2021 WL 534517, at *2-3 (D.S.D. Feb. 12, 2021). The court has assumed the policy statements still apply to compassionate release motions brought under the FSA and utilizes USSG §1B.13, Notes 1(A)-(D) to guide its analysis. *See, e.g.*, *Muhs*, 2021 WL 534517, at *3.

Rountree contends that the COVID-19 pandemic, her health conditions coupled with the current conditions of SeaTac FDC satisfy the "extraordinary and compelling reasons" standard under 18 U.S.C. § 3582(c)(1)(A)(i). Docket 537 at 2-11; Docket 552 at 4-5. The court will analyze her circumstances under the medical conditions category, USSG § 1B1.13 Note 1(A) and the catch-all provision, USSG § 1B1.13 Note 1(D).

Assuming the court's discretion to consider compassionate release is at

least as broad as the outdated policy statement of the Sentencing Commission, Rountree has failed to show that her reasons for release rise to the level of "extraordinary and compelling" circumstances justifying a reduction in sentence.

### A.     Medical Conditions Category, Note 1(A)

As relevant here, the medical conditions category applies when the defendant is suffering from a serious physical or medical condition that substantially diminishes her ability to provide self-care within a correctional facility and from which she is not expected to recover. USSG § 1B1.13 cmt. n.1(A)(ii).

COVID-19 appears to pose a particular risk for individuals with certain existing health conditions. The Centers for Disease Control and Prevention (CDC) updated its current understanding of these risks. *See People with Certain Medical Conditions*, Ctrs. for Disease Control & Prevention (Jan. 26, 2023) https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. The CDC states individuals with the following conditions are more likely to become very sick with COVID-19: cancer or having a history of cancer, chronic kidney disease, chronic liver disease (such as alcohol-related liver disease, non-alcoholic fatty liver disease, autoimmune hepatitis, and cirrhosis), chronic lung diseases (including moderate to severe asthma, bronchiectasis, bronchopulmonary dysplasia, chronic obstructive pulmonary disease, emphysema, interstitial lung disease, idiopathy pulmonary fibrosis, pulmonary embolism, and pulmonary

hypertension), cystic fibrosis, dementia or other neurological conditions, diabetes (type 1 or type 2), having any type of disability (such as ADHD, cerebral palsy, birth defects, intellectual and developmental disabilities, learning disabilities, spinal cord injuries, or Down syndrome), heart conditions (such as heart failure, coronary artery disease, cardiomyopathies, or possibly hypertension), HIV infection, immunocompromised condition or weakened immune system due to a medical condition or treatment for a condition (such as people who have cancer and are on chemotherapy, a solid organ transplant, taking certain types of medicines for long periods of time, and having a life-long condition), mental health conditions (having mood disorders, including depression, and schizophrenia spectrum disorders), being overweight or obese, partaking in little or no physical activity, pregnancy, sickle cell disease or thalassemia, being a current or former smoker, having a solid organ or blood stem cell transplant, stroke or cerebrovascular disease, substance use disorders (such as alcohol, opioid, or cocaine use disorder), and tuberculosis. *Id.*

      The court has reviewed the medical records in this case. Rountree is diagnosed with a prior clavicle fracture, latent tuberculosis, and syphilis. Docket 541 at 43. On March 23, 2022, Rountree was seen at the chronic care clinic for pain in her left clavicle. Docket 541 at 6. Rountree informed her medical provider that she had a left clavicular fracture in March of 2020 due to a motor vehicle accident. *Id.* She stated she felt a shooting pain on her left arm and numbness of her left fingers when hyperextended. *Id.* She was initially

7

taking Gabapentin for her injury but switched to Oxcarbazepine upon transfer to FDC SeaTac. *Id.* Rountree stated that Oxcarbazepine has been ineffective in managing her pain and she rated her pain as an eight. *Id.* When examining her left clavicle, the physician noted a deformity and a protrusion, however no erythema or swelling was present. *Id.* at 7. Rountree was prescribed oxcarbazepine and she was instructed to take 300 mg three times daily instead of twice daily as previously prescribed. *Id.* She was encouraged to follow up with her doctor as needed or within a year. *Id.* at 8. Rountree was seen for a physical on April 18, 2022, and her provider noted that her pain was managed with Trileptal and Cymbalta, which are generic medications for oxcarbazepine and duloxetine. *Id.* at 20, 49.

Rountree has a history of tuberculosis. *Id.* at 5, 18, 66. On March 24, 2022, Rountree had a positive PPD skin test at 10 millimeters in duration.[2] *Id.* at 5. Rountree's provider requested she be screened for respiratory tuberculosis and a chest x-ray was scheduled. *Id.* The medical records indicate that Rountree received a chest x-ray on February 14, 2022, and the images did not contain any sign of tuberculosis. *Id.* at 63. On April 20, 2022, Rountree received an additional chest x-ray and the results noted "[l]ungs and pleural spaces are clear… [n]o radiographic evidence for an acute cardiopulmonary

---

[2] A Mantoux tuberculin skin test (TST) is conducted to determine whether an individual is infected with Mycobacterium tuberculosis. *See Tuberculin Skin Testing Fact Sheet*, Ctrs. for Disease and Prevention (Nov. 2, 2020), https://www.cdc.gov/tb/publications/factsheets/testing/skintesting.htm. The test is administered by injecting "… purified protein derivative (PPD) into the inner surface of the forearm." *Id.* An induration of 10 or more millimeters is considered a positive skin test reaction. *Id.*

process." *Id.* at 66-67. On April 22, 2022, Rountree was seen due to complaints of a headache. *Id.* at 3. She was advised to purchase Motrin from commissary for her migraine. *Id.* at 4. Her medical records do not reflect further treatment for tuberculosis. *Id.*

On May 20, 2022, Rountree was treated for syphilis. *Id.* at 1. Her urine examination produced negative results for chlamydia and gonorrhoeae. *Id.* at 52. She was prescribed a penicillin injection once a week for 3 weeks. *Id.* at 1. Her provider noted that she should have a pelvic exam, a physical exam, and a PAP screening at a later date. *Id.*

The court has required a more particularized showing of risk of serious illness from COVID-19 when evaluating compassionate release motions. Rountree's medical conditions—latent tuberculosis, clavicle fracture, syphilis—do not prevent her from receiving proper care in a correctional facility setting, and her medical conditions do not amount to extraordinary and compelling circumstances. Rountree has received treatment for her medical conditions, and they are managed through medication and regular appointments. *See generally* Docket 541.

Moreover, the COVID-19 pandemic alone is insufficient to warrant early release. The BOP has made significant changes to correctional operations since the pandemic started in early 2020. *See COVID-19 Coronavirus*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Jan. 31, 2023). These include sanitary and safety measures, restrictions on movement, and visitation restrictions, amongst others. *See COVID-19 Modified Operations Plan & Matrix,*

Fed. Bureau of Prisons,

https://www.bop.gov/coronavirus/covid19_modified_operations_guide.jsp (last visited Jan. 31, 2023). The BOP has also transferred many thousands of inmates to home confinement. *See COVID-19 Coronavirus.* Since March 26, 2020, 52,866 inmates have been placed in home confinement. *Id.* These measures have led to a dramatic decrease in the total BOP population, which in turn has increased opportunities for social distancing and reduced the strain on BOP resources.

      The court believes Rountree's medical conditions are appropriately managed at SeaTac FDC, the facility is engaged in appropriate efforts to protect inmates against the spread of COVID-19, and the facility would act to treat any inmate who does contract COVID-19. The fact that SeaTac FDC had a COVID-19 outbreak does not negate such conclusions. The data for SeaTac FDC shows a COVID-19 outbreak that was ultimately contained. *See COVID-19 Coronavirus.* There were no deaths as a result, and 350 inmates have recovered. *Id.* This persuades the court that SeaTac FDC has acted appropriately to treat inmates who do contract COVID-19. The court believes the facility will continue to appropriately treat inmates who do so.

      The BOP's vaccination program for staff and inmates is another protective measure warranting consideration. The BOP has implemented a COVID-19 vaccination plan to protect inmates and staff and limit the transmission of COVID-19 within the facilities. *See id.* Approximately 346,745 doses have been administered systemwide. *Id.* At SeaTac FDC, 1042 inmates

were fully inoculated as of January 31, 2023. *Id.* Contrary to the government's claims, Rountree has not received a COVID-19 vaccine.[3] Docket 545 at 3. Rountree refused a COVID-19 vaccine on February 25, 2022.[4] Docket 541 at 47.

Moreover, the BOP's efforts to limit the spread of COVID-19 and protect inmates appear to be working. As of January 24, 2022, the BOP reported only 101 federal inmates have confirmed positive test results for COVID-19 nationwide. *See COVID-19 Coronavirus.* There are currently over 145,000 federal inmates in BOP-managed facilities. *Id.*

In light of the above, the court finds Rountree's circumstances do not clear the high bar necessary to warrant compassionate release for "extraordinary and compelling reasons" under 18 U.S.C. § 3582(c)(1)(A)(i).

### B.  Catch-all Category, Note 1(D)

The catch-all category in Note 1(D) does not result in a different outcome. The catch-all category allows for release if there are extraordinary and compelling reasons other than, or in combination with, those identified in 1(A) through 1(C) USSG § 1B1.13, cmt. n.1(D). Even after considering Rountree's

---

[3] The government in its response claims that Rountree has had COVID-19 and has been vaccinated against COVID-19. Docket 545 at 2. The government cites Rountree's medical record, however the record shows that the provider had noted "no" for "Cough, Shortness of Breath, Fatigue, Body aches, Sore throat, Diarrhea, Headache, Loss of taste or smell, Nausea or Vomiting, History of COVID, History of COVID-19 vaccine administration[.]" Docket 541 at 37; Docket 545 at 2.

[4] Rountree indicates in her response that she has not been vaccinated due to her religious beliefs. Docket 552 at 4.

health conditions and the COVID-19 pandemic, the court is not convinced that "extraordinary and compelling reasons" exist to release her from custody early.

### III. Sentencing Factors of § 3553(a)

The 3553(a) sentencing factors further show that compassionate release is not warranted. Rountree pleaded guilty to conspiracy to distribute a controlled substance. Docket 338; Docket 320. Rountree was involved in the transportation of 2 pounds of methamphetamine to Hutchinson, Kansas. Docket 456 ¶ 10. Upon their return, Rountree and a co-conspirator were pulled over in Pennington County due to a cracked windshield and Rountree following too closely. *Id.* ¶¶ 9-10. When speaking with Rountree, Rountree provided a false name. *Id.* ¶ 9. The officer searched the vehicle and discovered a stolen pistol, syringes, three grams of methamphetamine, and drug paraphernalia items with methamphetamine residue. *Id.* ¶¶ 9-10 After being placed in the back seat of the patrol car, Rountree attempted to urinate in the back seat and resisted arrest when the officer attempted to put her in handcuffs. *Id.* She was charged with Possession of Controlled Substances Schedules 1 or II, Possession of a Firearm with Prior Felony Drug Conviction, Impersonation to Deceive Law Enforcement Officer, Resisting Arrest, and Obstructing Police, Jailer, or Firefighter in Pennington County. *Id.* ¶ 9.

Additionally, Rountree's co-conspirator indicated to law enforcement that she had purchased numerous small quantities totaling to 85.05 grams of methamphetamine from the co-conspirator, Charles Clark, during the duration of the conspiracy. *Id.* ¶ 11. Clark also indicated he had purchased

113.4 grams from Rountree through another co-conspirator, Mason Colbath. *Id.* Approximately 1,108 grams of methamphetamine were attributed to Rountree. *Id.* ¶ 13.

The court found that Rountree had a total offense level of 27 and she was in criminal history category V. Docket 485-1 at 1. Her guideline range was 120 to 150 months in custody. *Id.* Rountree was sentenced to "118 months, which accounts for approximately 2 months served in state custody, for which the Bureau of Prisons will not credit toward her federal sentence." Docket 485 at 2. The court concludes that the sentence continues to be appropriate for the seriousness of the crime to which Rountree pleaded guilty.

## CONCLUSION

Rountree has failed to satisfy the extraordinary and compelling reason standard. Thus, it is

ORDERED that the defendant's motion for relief under the First Step Act (Docket 537) is denied.

Dated January 31, 2023.

BY THE COURT:

*/s/ Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE